**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1890 and 24-2014
_____

RUSSELL REID WASTE HAULING & DISPOSAL
SERVICE COMPANY INC,

Petitioner in No. 24-1890

v.

NATIONAL LABOR RELATIONS BOARD
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner in No. 24-2014

v.

RUSSELL REID WASTE HAULING & DISPOSAL
SERVICE COMPANY INC
_____

On Application for Enforcement and
Cross-Petition for Review of a
Decision and Order of the
National Labor Relations Board
(NLRB Case Nos. 22-CA-263364 and 22-RC-261504)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 10, 2025
_____

Before: SHWARTZ, RESTREPO, and CHUNG, <u>Circuit Judges</u>.

_____

OPINION[*]

_____

SHWARTZ, Circuit Judge.

Russell Reid Waste Hauling & Disposal Service Company, Inc. petitions for review of the National Labor Relations Board's order determining it committed an unfair labor practice, setting aside results of a union election, and directing a new election. The Board cross-petitions for enforcement of the order. For the following reasons, we will grant the Board's cross-petition and deny Russell Reid's petition, except as to its challenge to the order setting aside the election results and directing a new election, which we will dismiss for lack of jurisdiction.

I

A

Russell Reid, which is owned by United Site Services ("USS"), offers portable sanitation and nonhazardous liquid waste management services. Its Keasbey, New Jersey facility is part of USS's east region facilities. In June 2020, a union petitioned to represent certain employees at the Keasbey facility[1] and a mail-ballot vote on whether to unionize was subsequently scheduled to commence in early August 2020. At that time,

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The union sought to represent nonhazardous liquid waste employees, which included technicians, equipment specialists, and mechanics.

no employees at the Keasbey facility were union members, but some workers at the other east region facilities were unionized.

Before it acquired Russell Reid, USS usually granted wage increases in July or August to nonunionized employees.[2]  Consistent with this practice, on July 13, 2020, Russell Reid's regional vice president sent a memorandum addressed to all east region employees announcing that year's wage increase and explaining that employees not "part of a collective bargaining unit (i.e. Union)" were eligible for the increase, which would take effect in July.[3]  JA434.

On July 21, 2020, the vice president issued a separate memorandum addressed only to the Keasbey facility employees.  This memorandum was posted at the Keasbey facility.  At that time, the Keasbey facility was the only east region facility with a pending union election.  The memorandum stated in relevant part:

> I am happy to announce we will offer a merit-increase to eligible employees!
>
> There are some exceptions in order to be eligible.  For example, you must not be part of a collective bargaining unit (i.e., Union) . . . The merit [increase] will be effective July 5th and will show in your July 17th paychecks.  However, due to the pending NLRB election, we believe we must postpone implementing merit increases for Keasbey employees in job classifications who are eligible to vote in the election.  The only reason we are delaying implementing these merit increases is because we are concerned

---

[2] Wage increases for unionized employees were governed by their collective bargaining agreements.

[3] The record is unclear on whether the Keasbey employees saw the July 13 memorandum.  The ALJ explained that although the union director testified that some of the voting-eligible employees at the Keasbey facility saw the July 13 memorandum, the ALJ did not credit his testimony due to his open hostility to Russell Reid's counsel and lack of respect for the proceeding.

it might be viewed as "vote buying" or give the appearance we are trying to influence the outcome of the upcoming election.

After the election is over, all affected employees will receive their eligible merit increases retroactive to July 5th regardless of the results of the election and regardless of how anyone votes in the upcoming election.

JA435 (emphasis removed).

A few weeks later, the Keasbey facility held the representation election, and the union lost twenty-three to eleven.

B

The Board's General Counsel issued a complaint alleging that Russell Reid's memoranda violated the National Labor Relations Act ("NLRA"). The union also filed objections to the election, arguing that the memoranda influenced the election results and requesting that the election be set aside. The two cases were consolidated for hearing before an administrative law judge ("ALJ").

The ALJ found that Russell Reid committed an unfair labor practice in violation of Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), because the July 21 memorandum tainted the election results. The ALJ therefore set aside the election results and ordered a new election. Russell Reid filed exceptions to the ALJ's decision, and a three-member Board panel heard the case.

In a two-member majority decision, the Board affirmed the ALJ's ruling, concluding that the memorandum had the tendency to coerce employees not to vote for

4

union representation, as employees reading it would reasonably be concerned that they would not receive the increase if they unionized.

Russell Reid petitions for review and the Board cross-petitions to enforce the order.

II[4]

Russell Reid raises four grounds for relief: (1) the removal protections for the Board's ALJs are unconstitutional; (2) the Board's ruling violates the First Amendment; (3) substantial evidence did not support the conclusion that it committed an unfair labor practice; and (4) the purported unfair fair labor practice did not justify setting aside the election results and ordering a new election. None provide grounds for granting Russell Reid's petition.

---

[4] The Board had jurisdiction under 29 U.S.C. § 160(a). We have jurisdiction to review the petitions under 29 U.S.C. § 160(e) and (f). "We apply plenary review to questions of law and the [Board's] application of legal precepts." NLRB v. Starbucks Corp., 125 F.4th 78, 86 (3d Cir. 2024) (internal quotation marks omitted). We affirm factual findings if they are supported by "substantial evidence on the record considered as a whole." Atl. City Elec. Co. v. NLRB, 5 F.4th 298, 305 (3d Cir. 2021) (internal quotation marks omitted). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." Advanced Disposal Servs. E., Inc. v. NLRB, 820 F.3d 592, 606 (3d Cir. 2016) (internal citation omitted).

A

Russell Reid concedes that it did not raise the ALJs' removal protections or First Amendment arguments before the Board. We may only review issues not raised before the Board in "extraordinary circumstances." 29 U.S.C. § 160(e).

Russell Reid argues that extraordinary circumstances excuse its failure to raise its challenge to the ALJs' removal protections because the challenge goes "to the very power of the Board to act and implicate[s] fundamental separation of powers concerns." Russell Reid Br. at 41 n.23 (quoting Advanced Disposal Servs. E. v. NLRB, 820 F.3d 592, 598 (3d Cir. 2016)). We have rejected this argument, holding that such a challenge "does not call into question the ALJ's or the Board's core authority to act" because even if an official's removal protections are unconstitutional, she "can still carry out [her] duties." NLRB v. Starbucks Corp., 125 F.4th 78, 87 (3d Cir. 2024). Moreover, Russell Reid identifies no extraordinary circumstances to warrant considering this unexhausted constitutional challenge to the ALJs' removal protections. See 29 U.S.C. § 160(e).

We also cannot consider Russell Reid's unexhausted argument that, under Counterman v. Colorado, 600 U.S. 66 (2023), the Board's ruling runs afoul of the First Amendment because there was no finding that Russell Reid understood its July 21 memorandum was threatening. Russell Reid contends that raising this constitutional argument to the Board would have been futile because the Board purportedly already

6

concluded that <u>Counterman</u> did not apply to its proceedings.[5]  A futility concern, however, is not an extraordinary circumstance that excuses Russell Reid's failure to exhaust.  See <u>Keystone Roofing Co. v. Occupational Safety & Health Rev. Comm'n</u>, 539 F.2d 960, 964 (3d Cir. 1976).  We therefore cannot consider Russell Reid's First Amendment argument.  See <u>NLRB v. FES</u>, 301 F.3d 83, 88-89 (3d Cir. 2002) (holding the court could not review petitioner's Section 8(c) challenge involving "First Amendment concerns" because it was not raised before the Board).

### B

We next review Russell Reid's argument that substantial evidence does not support the Board's conclusion that it committed an unfair labor practice under Section 8(a)(1).  This argument lacks merit.

Section 8(a)(1) prohibits employers from engaging in actions that "interfere with, restrain, or coerce employees in the exercise" of their statutorily protected rights to organize or engage in other protected union activity.  29 U.S.C. § 158(a)(1).  An

---

[5] Russell Reid also attempts to justify its failure by arguing that "employers need not present constitutional arguments to the Board to preserve them" and by citing <u>800 River Road Operating Co. LLC v. NLRB</u>, 784 F.3d 902, 906 n.1 (3d Cir. 2015).  Russell Reid Br. 37 n.20.  In <u>800 River Road</u>, we stated that the Section 8(c) challenge there came "too late" as "it was not raised before the Board."  784 F.3d at 906 n.1.  Although we noted that "First Amendment arguments . . . might not be barred, because we have an obligation 'to read statutes to avoid serious constitutional problems,'" we further observed that even if we were to "entertain a separate First Amendment argument" at that point in the proceedings, we would conclude that the argument was "immaterial" because whether the speech there was coercive was the focus of the Section 8(c) claim and considering the First Amendment claim "would add little or nothing to our ruling."  <u>Id.</u> The same is true here.

7

employer's statements violate Section 8(a)(1), if "in light of all the existing circumstances," they "would tend to coerce a reasonable employee not to exercise her labor rights." FDRLST Media, LLC v. NLRB, 35 F.4th 108, 122 (3d Cir. 2022) (internal quotation marks and emphasis omitted). This test is objective and asks us to decide what a reasonable employee would have understood the employer's actions to convey. Id. The employer's intent is irrelevant, id., and there need not be proof of actual interference with employees' rights, NLRB v. Garry Mfg. Co., 630 F.2d 934, 938 (3d Cir. 1980). Proof of implied coercion may suffice. Id.

An employer may postpone an expected wage increase while a union election is pending. In fact, an employer does not violate Section 8(a)(1) by delaying "an expected wage or benefits increase so long as it makes clear to employees that: (1) the sole purpose of the postponement is to avoid the appearance of influencing the election's outcome; and (2) the employees w[ill] receive their . . . increases after the election regardless of the outcome." Oberthur Techs. of Am. Corp. v. NLRB, 865 F.3d 719, 726 (D.C. Cir. 2017) (internal quotation marks omitted) (alteration in original). Failure to make these representations when postponing an expected increase, however, may constitute an unfair labor practice. Id. at 725-26.

Here, Russell Reid sent the July 13 memorandum announcing the annual increase to the east region employees (some of whom were part of a union), but the record is unclear on whether the Keasbey employees received it. See supra n.3. It is clear, however, that the July 21 memorandum: (1) was sent to the Keasbey employees; (2)

8

announced that increases would be delayed until after the then-upcoming union election;[6] and (3) explicitly told Keasbey employees that, to be "eligible" for the merit increase, they "must not be part of a collective bargaining unit (i.e., Union)." JA435. In this context, a reasonable Keasbey employee would understand this to mean that he would not receive an increase if he voted for the union and the union won. The memorandum therefore failed to make clear that employees would receive their increases regardless of the election outcome. Accordingly, substantial evidence supports the Board's determination that the July 21 memorandum had the tendency to coerce a reasonable Keasbey employee not to exercise his right to choose union representation. See e.g., Oberthur Techs. of Am. Corp., 865 F.3d at 726 (holding that substantial evidence supported the Board's determination that the employer violated the NLRA when it froze wage benefits before an upcoming election and failed to communicate to its employees that the benefits would be reinstated no matter the election's outcome).

Russell Reid's attempts to persuade otherwise fail. First, a reasonable Keasbey employee would not have understood the July 21 memorandum's eligibility language to apply only to unionized employees at the other east region facilities. The July 21

---

[6] The July 21 memorandum's language—that Russell Reid was delaying the merit increase for voting-eligible employees to avoid appearing like it was trying to influence the election—alone was lawful. See Oberthur Techs. of Am. Corp., 865 F.3d at 725. Substantial evidence, however, shows that the "Board-sanctioned statements [were] interposed between [the memorandum's] language," placing "the onus for delaying the wage increase on [the union]," and the context in which the language appeared made the memorandum "otherwise coercive." JA2.

memorandum (1) addressed only the Keasbey employees, (2) was posted at the Keasbey facility, and (3) contained no language suggesting that the eligibility requirement referred only to employees at other facilities who were already part of a union. That some Keasbey employees worked with unionized workers at other facilities or that some Keasbey employees were formerly part of a union does not change the fact that the memorandum was addressed to only Keasbey employees, none of whom were unionized when the memorandum was posted and all of whom were on the cusp of voting on whether to unionize.

Second, the memorandum's language—that "all affected employees will receive their eligible merit increases" after the election regardless of the election results or how anyone votes—does not change our holding. JA435. Substantial evidence supports the Board's determination that this language "compounds, rather than clears up, any confusion." JA4. As the Board explained, because the memorandum defined eligibility for the increase as excluding unionized employees, a Keasbey employee would have reasonably believed that he would not receive his "eligible merit increase[]" if he voted for the union and the union subsequently won.[7] JA435.

---

[7] Although one may read the memorandum to say that the merit increase for the Keasbey employees would be forthcoming after the election even if the union won, we conclude that substantial evidence supports the Board's determination that a reasonable employee would have understood the memorandum to mean that eligibility for the increase was contingent on the union being voted down. See generally Starbucks, 125 F.4th at 90.

Although we conclude that the Board correctly determined that Russell Reid committed an unfair labor practice, we lack jurisdiction to review Russell Reid's challenge to the Board's remedy of setting aside the election results and directing a new election. That is because an order directing a new election is not final until the election is complete. See Graham Architectural Prods. Corp. v. NLRB, 697 F.2d 534, 543 (3d Cir. 1983). Therefore, we dismiss this aspect of Russell Reid's petition. Id.

### III

For the foregoing reasons, we will grant the Board's cross-petition and deny Russell Reid's petition, except as to its challenge to the order setting aside the election results and directing a new election, which we will dismiss for lack of jurisdiction.

11